Cheshire,
No. 5667.

## Nassif Realty Corporation

*v.*

## National Fire Insurance Company.

Argued April 2, 1968.
Decided July 17, 1968.

*Faulkner, Plaut, Hanna & Zimmerman* ( *Mr. George R. Hanna* orally ), for the plaintiff.

*Wyman, Bean & Tefft* ( *Mr. Arthur E. Bean, Jr.* orally ), for the defendant.

Griffith, J. Action of assumpsit to recover damages arising out of the destruction of a Quonset Hut type building on the night of February 2-3, 1963. Trial by the Court resulted in a verdict for the defendant. Plaintiff's exceptions reserved and transferred by *Loughlin*, J.

Plaintiff Nassif Realty Corporation was the owner of land in Walpole, New Hampshire with certain buildings thereon including the Quonset Hut type building which was destroyed. All buildings were insured for fire damage with the defendant with extended coverage including windstorm damage, on the date of the destruction.

According to the findings of the Trial Court the Quonset Hut building was destroyed sometime between midnight on February 2, 1963 and daylight on February 3, 1963. During the

night of February 2-3, 1963 there was a windstorm with winds ranging from 25 to 35 miles per hour. At the time of the collapse of the hut, between 18 or 19 inches of snow had accumulated on the roof of the hut creating a load of 26.8 pounds per square foot. In addition to the windstorm there was a period of some seven hours during the night of February 2-3, 1963 when rain and sleet fell. The Trial Court further found that the predominant factor in the collapse of the building was the snow accumulation and precipitation during the night in question and that the responsibility for the collapse could be apportioned on a basis of three to one between the snow accumulation and precipitation and the windstorm.

The question presented by the appeal relates to the clause in the insurance contract providing coverage for damage or destruction due to windstorm but expressly excluding loss " directly or indirectly by . . . ice ( other than hail ), snow or sleet, whether or not driven by wind. " It is the claim of the plaintiff that the findings and rulings of the Trial Court required a verdict for the plaintiff as a matter of law.

The Court's findings are limited to the granting and denial of requests submitted by plaintiff and defendant. The granted requests relating particularly to the question are as follows:

Plaintiff's requests:

" 6. The load on the roof of the unheated Quonset Hut resulting from the accumulation of snow was in and of itself insufficient to cause the roof to fall. "

" 8. The wind of gale or near gale force on the night of February 2-3, 1963 at Walpole, New Hampshire constituted a windstorm which caused the Plaintiff's Quonset Hut to be subjected to a load beyond its structural bearing capacity. "

Defendant's requests:

" 17. That the predominant factor in the collapse of the building was the snow accumulation and the precipitation during the night in question and that the said snow accumulation and precipitation was responsible on a basis of three to one, as compared to the wind conditions at the time. "

" 19. That the loss suffered by the plaintiff as a result of the collapse of the building was not a direct loss by wind storm, but was a loss directly or indirectly by snow and/or sleet, not covered under the provisions of the plaintiff's policy. "

It should be further noted that the Trial Court denied plaintiff's request Number 9 and thereby refused to find that the windstorm was the direct, active and proximate cause of the loss of the plaintiff's Quonset Hut.

The record fully supports the findings of the Trial Court on the facts of the case and the plaintiff has not seriously argued that the findings of fact were not warranted. What the plaintiff does argue is that the findings of fact made by the Court required a verdict for the plaintiff as a matter of law. We do not so interpret the findings.

The plaintiff relies upon the granting of their request number 8 that the windstorm caused the Quonset Hut to be subjected to a load beyond its structural bearing capacity. This finding however, must be read with the findings number 17 and 19 of the defendant's which were granted and the denial of plaintiff's request number 9. Combining all of these findings together the findings were that the wind caused the building to be subjected to a load beyond its bearing capacity but that it was not the direct and proximate cause of the loss and that the dominant cause of the loss was the direct or indirect result of the accumulation of snow and sleet.

In *Terrien* v. *Insurance Co.,* 96 N. H. 182, 185 it is pointed out that the last of concurring forces to bring about a loss is not necessarily controlling on the question of proximate cause. Here as in that case which of the two concurring causes was the proximate cause of the loss presented a question of fact. The evidence permitted the Trial Court to find that the proximate cause of the loss was the snow and sleet. The rule that the determination of the dominant and the efficient cause of a loss occasioned by contributing causes is for the trier of fact appears to be generally followed. See 6 Couch Cyclopedia of Insurance Law, *s.* 1466; *Pearson* v. *Aroostook County Patrons Mut. Ins. Co.,* 149 Me. 313; Annot. 93 A. L. R. 2d 145.

*Exceptions overruled.*

All concurred.